## BAXTER v. BAXTER.

1. A debt due by a surety at the time of his death on a county treasurer's bond, for a default of his principal, is a "debt due to the public," and as such is entitled to priority of payment out of the assets of one deceased, under the act of 1789 (*Gen. Stat.* (1872), 457); but it has not a preference over antecedent liens, either general or special, in the distribution of the proceeds of sale of the property covered by such liens. *Cases reviewed.*
2. Under action to marshal the assets of one deceased, costs, disbursements, and counsel fees are primarily chargeable on the unencumbered assets, but the expenses incident to the enforcement of liens should be paid out of the proceeds of the encumbered estate.

Before FRASER, J., Newberry, February, 1884.

This was an action by Fannie N. Baxter in her own right and as administratrix of her deceased husband, against the children and creditors of the deceased. The decree of the Circuit Judge was as follows:

This case came before me on the report of the master, dated November 14, 1883, and exceptions filed by W. J. Duffie and the State of South Carolina, defendant creditors. I shall announce my conclusions as briefly as I can, not to be obscure:

1. The order in which the debts of a decedent testate or intestate are to be paid out of his estate does not form any part of the contract by which the debt is incurred in his life-time. It pertains only to the remedy. The act of 1878, which was of force at the death of the intestate in this case, controlled the order of payment, and it is the debt, and not the mortgage, which is a mere security for the debt, which is to give the rank in the administration of the assets.

2. I see no reason why a treasurer's bond should hold any higher rank in the administration than the bond of every other public officer, or even recognizance in the sessions. They are all debts due on contracts. If such debts are to be ranked as "debts due the public," and payable as such in the administration, there would be absolutely nothing in this State on which to base a credit. I do not see how even a judicial ascertainment of

the amount due on the treasurer's bond would alter the situation, except to make the claim rank as a judgment, which in this case has not been obtained.

3. It has never been the practice, so far as I know, to order the general costs, fees, and disbursements in a case like the one now before me paid out of any other than the unencumbered estate. The master seems to have followed this rule.

It is therefore ordered and adjudged, that the exceptions be overruled, and the report of the master be confirmed.

The State of South Carolina duly served notice of appeal from said decree upon the following exceptions:

1. Because his honor erred in overruling appellant's exceptions to the master's report, that the master erred in recommending that the demand against the estate of James M. Baxter, deceased, arising out of his suretyship on the bond of Jesse C. Smith, late county treasurer of Newberry County, should only be paid *pro rata* with the specialty debts of the said intestate; whereas it is submitted that he should have found that the same ranked as a debt due to the public in the administration of the assets of the intestate.

2. Because his honor erred in overruling appellant's exceptions to the master's report, that the master erred in not finding that said demand on account of the suretyship of the intestate on said official bond, takes precedence under the act of 1789 of all other claims against the intestate's estate.

3. Because his honor erred in overruling appellant's exceptions to the master's report, that the master erred in not finding the costs and disbursements of this action, including counsel fees of the estate, should be paid out of the unencumbered personal estate of the intestate; whereas it is submitted that the same should at least be apportioned among the whole personal and real estate of the intestate.

*Messrs. George Johnstone* and *Geo. S. Mower*, for appellant.

*Messrs. Suber & Caldwell* and *J. Y. Culbreath*, contra.

May 19, 1885. The opinion of the court was delivered by Mr. Justice McIver. On February 5, 1881, James M. Bax-

ter departed this life intestate, leaving real estate, various articles of tangible personal property, together with sundry choses in action, which being insufficient for the payment of his debts, this proceeding was commenced to marshal the assets of his estate, call in creditors, and sell the lands. The claims consisted of bonds secured by mortgages of real estate, judgments upon which executions were issued in 1869, bonds unsecured, sealed notes, and open accounts. Amongst the unsecured bonds was one in favor of the State, given by Jesse C. Smith, with the intestate as surety, to secure the faithful performance of his duties as county treasurer. Upon this bond it is conceded, for the purposes of this case, that default has been made, though no judgment has yet been recovered thereon ; and one of the main questions in the case is whether this bond constitutes a debt due to the public, and if so whether this will give it priority over the debts secured by liens, either special or general. The only other question is whether the costs and disbursements of this action, including the counsel fees of those representing the estate, should be a charge, primarily, on the unencumbered estate, or whether they should be a charge upon the whole estate.

What constitutes "debts due to the public" in the sense of those terms as used in the act of 1789 (*Gen. Stat.* (1872), 457), the law in force at the time of the death of the intestate, does not seem ever to have been judicially ascertained in this State. In the case of *The Commissioners of Public Accounts* v. *Greenwood* (1 *Desaus.*, 450, 600), it seemed to be assumed that a liability for a default on the bond of one of the commissioners of the treasury was such a debt, though the question was not discussed or *decided* in that case, inasmuch as the decision was rested upon another ground. In *State* v. *Harris* (2 *Bail.*, 598), O'Neall, J., in delivering the opinion of the court, expressed the opinion that the meaning of the term "debts due to the public," as used in the act of 1789, was "debts which are due to the State as a sovereign, and for the protection of both the citizen and property," but that debts "which arise *ex contractu,* and which are therefore due to her in her corporate capacity, or debts which arise *ex delicto,* and which are the punishment of the law for misdemeanors, cannot be entitled to any preference over the debts due to citizens." But

this is conceded to be, as it manifestly was, a mere dictum. For in that case the question did not arise under the act of 1789, but there the question was as to the distribution of the assigned estate of a living insolvent debtor, and not as to the distribution of the assets of a person deceased, to which alone the act of 1789 applied. All that was really decided in the case was, that the State was not entitled, at common law or on the ground of prerogative, to any preference over other creditors.

In the case of *Klinck* v. *Keckley* (2 *Hill Ch.*, 250), the same judge announced the same opinion, basing it upon what he had said in *State* v. *Harris*, and seemed to think that the words in question were only intended to embrace taxes. He, however, adds: "But perhaps the words used in the act of 1789 ought to have a little more extended meaning, and to be construed by the common law." This, too, was a mere dictum, for all that the case really decides is that the act of 1789 only gives the State preference where the debts due to the State and the citizen were of equal degree; and hence that a junior judgment in favor of the commissioners of the poor, for certain taxes received by the intestate as chairman of the board of commissioners, and not paid over, could not take precedence of a senior judgment in favor of a citizen. It seems, therefore, that the question as to what debts are embraced within the terms, "debts due to the public," as used in the act of 1789, has never been decided. It is true that even the *dicta* of so eminent a judge, whose language has been quoted, is always entitled to the highest consideration, but at the same time they are not authoritative, and if found to be in conflict with what we regard as the proper construction of the terms used in the act, they will not be allowed to control our decision. Our duty is simply to ascertain, by the settled rules of construction, the legislative will, as declared by their language, and announce the same.

Now, the language used in the act is very general and comprehensive, "debts due to the public." No limitation is either expressed or implied by the terms used in the act, and we are aware of no rule of construction which would justify us in fixing any limit to general terms, when the legislature has not seen fit to do so. Hence, where we find that there is a debt and that it

is due to the public, we are bound to place it in the class which the legislature has declared shall be entitled to preference. We are less reluctant to reach this conclusion when we see that the court, both in the case of *The Commissioners* v. *Greenwood* and *Klinck* v. *Keckley*, seemed to assume, without, however, deciding the question, that debts arising from default in accounting for public money did belong to the class protected by the act, and were not disposed to coincide in the limitation placed upon those terms by Judge O'Neall.

Again, if the preference given to the State rested upon the ground of prerogative, then there might be good reason for confining the preference to such debts as were due to the State as a sovereign, as, for instance, taxes; but the above cases show that such is not the ground upon which the preference is based, but that it rests solely upon the terms of the act, and the only question, therefore, is as to the proper construction of the language there used.

We think, therefore, that the debt due by the intestate as surety on the bond of the county treasurer is entitled to be classed as a debt due to the public.

The next question is, whether such debt is entitled to preference over antecedent liens, either general or special. This question has been so repeatedly decided that it is not now open to argument. That a debt due to the public cannot take precedence of a debt secured by the lien of a mortgage, judgment, or execution, seems to be well settled by the following cases: *Commissioners* v. *Greenwood, supra; Klinck* v. *Keckley, supra; Rutledge* v. *Hazlehurst,* 1 *McCord Ch.*, 466; *Brown* v. *Gilliland,* 3 *Desaus.*, 539; *Haynsworth* v. *Frierson,* 11 *Rich.*, 476.

It is true that the case of *Percival* ads. *McVoy* (*Dudley,* 337) appears to be somewhat in conflict with this doctrine. In that case the plaintiff sued for services rendered intestate in his last illness as a nurse, and the administrator pleaded *plene administravit præter* a particular sum which was applicable to the payment of judgments recovered in the life-time of the intestate. The jury having found for the plaintiff, defendant appealed, amongst other things, upon the ground that the demand of the plaintiff was not entitled to rank as "expenses of the last illness" and take precedence of judgments, mortgages, and executions; and

the appeal was dismissed. It does not seem that the question which we are called upon to decide was considered in that case. The controversy there seemed to be whether such services were rendered gratuitously, and whether they could be regarded as expenses of the last illness, and no attention seems to have been paid to the question whether a debt for such expenses could take precedence of prior liens. It may be that the fund in the hands of the administrator, in that case, arose from assets not bound by the lien of the judgments, and if so, then there would not be any apparent conflict even with the cases above cited; but whether this was so or not, that case, in which the question manifestly did not attract or receive the attention of the court, cannot have the effect of shaking the doctrine settled by the cases which we have cited, none of which were referred to in *Percival* ads. *Mc-Voy*. Indeed, from what is said in the subsequent case of *Haynsworth* v. *Frierson, supra*, it is apparent that the court did not regard the case from Dudley as unsettling the law as established by the cases of *Commissioners* v. *Greenwood*, and other cases above cited.

While, therefore, the debt due by the intestate as surety on the bond of the county treasurer, is a debt due to the public, and as such entitled to precedence over other bond debts and sealed claims, it cannot take such precedence over the debts secured by liens, so far as the proceeds of the property covered by such liens are concerned.

The only remaining question is as to the fund upon which costs, disbursements, and counsel fees are primarily chargeable. We agree with the Circuit Judge that, as a general proposition, they are primarily chargeable on the unencumbered assets; but so much thereof as arises from the enforcement of these liens, as for example the expenses of surveys, advertisement, and sales of the property encumbered by the liens, should be paid out of the proceeds of the sales of such property; and this we understand to be the view taken by the master and intended to be approved by the Circuit Judge, though the general terms used in the decree might, possibly, leave room for the inference that all the costs, &c., were to be charged on the unencumbered assets.

The judgment of this court is that the judgment of the Circuit

Court be modified in accordance with the views herein announced, and that the case be remanded to that court for the purpose of carrying out such views.